# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

REGENIA RICHARDS,

          Plaintiff,

   v.

EXPERIAN INFORMATION
SOLUTIONS, INC.,

          Defendant.

Case No.:2:26-cv-11277

**COMPLAINT AND DEMAND FOR JURY TRIAL**

1. **FCRA, 15 U.S.C. § 1681 *et seq.***

Plaintiff Regenia Richards, ("Plaintiff") through counsel, alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* against Defendant Experian Information Solutions, Inc. ("Experian").

## I.      INTRODUCTION

1. The computerization of our society has resulted in a revolutionary increase in the accumulation and processing of data concerning individual American consumers. Data technology, whether it is used by businesses, banks, the Internal Revenue Service or other institutions, allows information concerning individual consumers to flow instantaneously to requesting parties. Such timely information is intended to lead to faster and better decision-making by its recipients and, in theory, all of society should ultimately benefit from the resulting convenience and efficiency.

2. Unfortunately, however, this information has also became readily available for, and susceptible to, mishandling and misuse. Individual consumers can, and do, sustain

substantial damage, both economically and emotionally, when inaccurate or fraudulent information is disseminated and/or published about them. In fact, Defendant acknowledges this potential for misuse and resulting damage every time it sells its credit monitoring services to a consumer.

3.      The ongoing technological advances in the area of data processing have resulted in a boon for the companies that accumulate and sell data concerning individuals' credit histories and other personal information. Such companies are commonly known as consumer reporting agencies ("CRAs").

4.      These CRAs sell information to readily paying subscribers (i.e., retailers, landlords, lenders, potential employers, and other similarly interested parties), commonly called "consumer reports," concerning individuals who may be applying for retail credit, housing, employment, refinancing, a car or mortgage loan or other forms of credit.

5.      Since 1970, when Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"), federal law has required CRAs to implement and utilize reasonable procedures "to assure maximum possible accuracy" of the personal, private, and financial information that they compile and sell about individual consumers.

6.      One of the primary purposes in requiring CRAs to assure "maximum possible accuracy" of consumer information is to ensure the stability of our banking system:

> The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

*See* 15 U.S.C. § 1681(a)(1).

7.      The preservation of one's good name and reputation is also at the heart of the FCRA's purposes:

> [W]ith the trend toward computerization of billings and the establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal "blips" and key-punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, and make him unemployable or uninsurable, as well as deny him the opportunity to obtain a mortgage or buy a home. We are not nearly as much concerned over the possible mistaken turn-down of a consumer for a luxury item as we are over the possible destruction of his good name without his knowledge and without reason. Shakespeare said, the loss of one's good name is beyond price and makes one poor indeed.

*Bryant v. TRW, Inc.,* 689 F.2d 72, 79 (6th Cir. 1982) [*quoting* 116 cong. Rec. 36570 (1970)] (*emphasis added*).

8.      In light of these important findings and purposes, Congress specifically noted "a need to insure that [CRAs] exercise their grave responsibilities with fairness, impartiality, and respect for the consumer's right to privacy. *See* 15 U.S.C. 1681(a)(4).

9.      Plaintiff's Complaint arises out of Defendant's blatantly inaccurate credit reporting, wherein Defendant misreported Plaintiff's bankruptcy status to potential creditors

10.     Accordingly, Plaintiff brings claims against the Defendant for failing to follow reasonable procedures to assure the maximum possible accuracy of Plaintiff's credit reports, in violation of the FCRA, 15 U.S.C. § 1681e(b).

11.     Plaintiff's Complaint also alleges that Defendant also violated 15 U.S.C. § 1681 *et seq.* by failing to reasonably investigate Plaintiff's consumer disputes, which resulted in Defendant's/s' reporting inaccurate information about Plaintiff.

## II.     JURISDICTION AND VENUE

12.     This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 because Plaintiff alleges violations of the FCRA, a federal law. *See* 15 U.S.C. § 1681p (FCRA) (permitting actions to enforce liability in an appropriate United States District Court).

13.     Venue in this Court is proper pursuant to 28 U.S.C. § 1391 because Defendant regularly transacts business within this District or are otherwise subject to personal jurisdiction in this District, and a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## III.     PARTIES

14.     Plaintiff is a natural person who resides in Westland, Michigan and is a "consumer" as defined by the FCRA, 15 U.S.C. § 1681a(c).

15.     Defendant Experian is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f).   On information and belief, Experian is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports," as defined in 15 U.S.C. § 1681a(d), to third parties. Experian's principal place of business is located at 475 Anton Boulevard, Costa Mesa, California 92626.

16.     Defendant Experian regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports," as defined in 15 U.S.C. § 1681a(d), to third parties. Defendant regularly furnishes consumer reports to third parties for monetary compensation, fees, and

other dues, using means and facilities of interstate commerce, and are therefore "consumer reporting agencies" as defined by 15 U.S.C. §1681a(f) of the FCRA.

17. During all times pertinent to this Complaint, Defendant was authorized to conduct business in the State of Michigan and conducted business in the State of Michigan on a routine and systematic basis.

18. During all times pertinent to this Complaint, Defendant acted through authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

19. Any violations by Defendant were not in good faith, were knowing, negligent, willful, and/or intentional.

20. Defendant failed to maintain procedures reasonably adapted to avoid any such violations.

## IV.   FACTUAL BACKGROUND

### Summary of the Fair Credit Reporting Act

21. The FCRA governs the conduct of consumer reporting agencies in an effort to preserve the integrity of the consumer banking system and to protect the rights of consumers to fairness and accuracy in the reporting of their credit information.

22. The FCRA was designed to protect consumers from the harmful effects of inaccurate information reported in consumer reports (commonly referred to as "credit reports"). Thus, Congress enshrined the principles of "fair and accurate credit reporting" and the "need to ensure that consumer reporting agencies exercise their grave

responsibilities with fairness" in the very first provision of the FCRA. *See* 15 U.S.C. §1681(a).

23.     Specifically, the statute was intended to ensure that "consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information. *See* 15 U.S.C. § 1681(b).

24.     To that end, the FCRA imposes the following twin duties on consumer reporting agencies: (i) consumer reporting agencies must devise and implement reasonable procedures to ensure the "maximum possible accuracy" of information contained in consumer reports (15 U.S.C. 1681e(b)); and (ii) consumer reporting agencies must reinvestigate the facts and circumstances surrounding a consumer's dispute and timely correct any inaccuracies (15 U.S.C. §1681i).

25.     The FCRA provides consumers with a private right of action against consumer reporting agencies that willfully or negligently fail to comply with either or both of their statutory obligations under the FCRA.

## Factual Background

26.     Defendant sells millions of consumer reports (often called "credit reports" or "reports") per day, and also sells credit scores.

27.     Pursuant to 15 U.S.C. § 1681e(b), consumer reporting agencies, like Defendant, are required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

28.     Defendant regularly purchases and obtains consumer bankruptcy information to include the consumer reports it sells to third parties for profit.

29.     Defendant's consumer reports generally contain the following information: (i) Header/Identifying Information: this section generally includes the consumer's name, current and prior addresses, date of birth, and phone numbers; (ii) Tradeline Information: this section pertains to consumer credit history, and includes the type of credit account, credit limit or loan amount, account balance, payment history, and status; (iii) Public Record Information: this section typically includes public record information, such as bankruptcy filings; and (iv) Credit Inquiries: this section lists every entity that has accessed the consumer's file through a "hard inquiry" (i.e., consumer-initiated activities, such as applications for credit cards, to rent an apartment, to open a deposit account, or for other services) or "soft inquiry" (i.e., user-initiated inquiries like prescreening).

30.     Defendant obtains consumer information from various sources. Some consumer information is sent directly to Defendant by furnishers, and other information is independently gathered by Defendant from third party providers/vendors or repositories, like computerized reporting services like PACER and Lexis-Nexis.

31.     Defendant regularly seeks out and procures consumer bankruptcy filing and discharge information, with the intention of including such information in the consumer reports Defendant sells.

32.     Defendant's unreasonable policies, procedures, and/or algorithms consistently fail to identify and update pre-bankruptcy debts as required by § 1681e(b).

33. The diligence Defendant exercises in uncovering and recording consumer bankruptcy filings is not replicated in Defendant's subsequent reporting of bankruptcy discharges and their effect on consumers' debts.

34. Defendant knows the information it reports about consumers' bankruptcies is often inconsistent with public records, furnished/reported information, and/or information contained in its/their own files.

35. The vast majority of institutions that offer financial services, e.g., banks, creditors, lenders) rely upon consumer reports from CRAs (like Defendant) to make lending decisions.

36. Those institutions also use FICO Scores, and other proprietary third-party algorithms (or "scoring" models), including debt-to-income ratios, to interpret the information in a consumer's consumer report, which is based on the amount of reported debt, payment history, date of delinquencies contained in Defendant's reports.

37. The information Defendant includes in consumer reports contributes to a consumer's overall creditworthiness and determines their FICO Score(s).

38. FICO Scores are calculated using information contained in Defendant's consumer reports.

39. Defendant knows that FICO and other third-party algorithms (including the algorithms owned by the CRAs, including Defendant) use variables or "attributes" derived from a consumer report to calculate a person's "credit score," which is a direct reflection of their creditworthiness.

40.     Defendant knows that FICO Scores factor the following consumer report information: Payment history (35%); Amount of debt (30%); Length of credit history (15%); New credit (10%); and Credit mix (10%).

   a. "Payment history" refers to whether a consumer has paid or her bills in the past, and whether these payments have been timely, late, or missed. In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently the delinquency occurred, and how many delinquent accounts exist. The more severe, recent, and frequent late payments are, the lower a consumer's FICO Score will be.

   b. The "amount of debt" a consumer owes has a major impact on their credit score. When a CRA reports a debt as outstanding when it is in fact discharged, the CRA is indicating that a consumer's "amount of debt" is higher than it actually is, which will undoubtedly impact a consumer's credit score.

41.     Defendant knows that lenders also consider a consumer's debt-to-income ratio ("DTI") before deciding to extend credit or approve financing terms.

42.     DTI compares the total amount a consumer owes (based on the total amount of debt reported by Defendant in its consumer reports) to the total amount a consumer earns.

43.     A consumer's income, however, is not included in their consumer report; only their amount of debt is. Consumers enter their income into credit applications.

Therefore, DTI is not calculated in a consumer's credit score, but is a factor in credit decisions.

44.     The higher the amount of reported debt that a consumer has, or is reported to have, the less favorable the consumer's DTI will be, and the more difficult it will be for a consumer to obtain credit. Moreover, if credit is extended at all, consumers will be offered terms for lower credit limits and higher interest rates.

45.     Experian is aware that DTI plays an impactful role in the evaluation of consumer credit applications, stating on its own website: "Creditors will use your DTI, along with your income, credit score, credit history and other factors, to determine whether to approve your credit application, how much you can borrow and what your loan terms will look like. Higher DTIs typically result in higher interest rates and fees and may even cause your application to be denied."[1]

46.     Defendant is well aware that the effect of a Discharge Order in a Chapter 7 Bankruptcy is that all statutorily dischargeable debts, other than those that have been reaffirmed or successfully challenged in an adversary proceeding court, are discharged.

47.     Despite the availability of accurate consumer information, Defendant regularly reports inaccurate information about accounts after consumers receive a Discharge Order.

---

[1] *What is Debt-to-Income Ratio?,* https://www.experian.com/blogs/ask-experian/credit-education/debt-to-income-ratio/

48.     Defendant's unreasonable policies and procedures cause it to routinely report inaccurate and materially misleading information about consumers, including Plaintiff, who have been discharged from Chapter 7 Bankruptcy.

49.     Rather than follow reasonable procedures to assure maximum possible accuracy, as required by the FCRA, Defendant frequently reports information concerning pre-bankruptcy debts based on information it/they know/s is incomplete or inaccurate.

50.     Consequently, Defendant regularly publishes consumer information that conflicts with information: provided by data furnishers to Defendant, already included in Defendant's credit files, contained in public records that Defendant regularly accesses, and/or sourced through Defendant's independent and voluntary efforts.

51.     Defendant routinely reports inaccurate and materially misleading information about consumers like Plaintiff, without verifying or updating it as required by § 1681e(b).

52.     Defendant knows the information it reports about consumers' bankruptcies is often inconsistent with public records, furnished/reported information, and/or information contained in Defendant's own files.

53.     Defendant fails to employ reasonable procedures to assure the maximum possible accuracy of the information that it reports about consumers, including, but not limited to, account balances, account statuses, payment histories, and payment statuses.

54.     Consumers have filed thousands of lawsuits and FTC and Consumer Financial Protection Bureau (CFPB) complaints against Defendant for its inaccurate credit reporting following a Chapter 7 discharge.

55.     Thus, Defendant is on continued notice of its inadequate post-bankruptcy reporting procedures. More specifically, Defendant is on continued notice that its inadequate procedures regularly result in the reporting of inaccurate balances, account statuses, payment histories, and/or payment statuses.

*Allegations Specific to the Credit Reporting of Plaintiff*

56.     Plaintiff filed for a "no asset" Chapter 7 Bankruptcy on or about July 11, 2019 in the United States Bankruptcy Court for the Eastern District of Michigan, petition no. 19-50138-mar.

57.     Plaintiff received an Order of Discharge on or about October 16, 2019.

58.     Thereafter, Plaintiff was not personally liable for her dischargeable debts and these debts have a $0 balance after the bankruptcy discharge.

59.     Upon information and belief, Defendant obtained Plaintiff's public record information from its vendor (e.g. Lexis-Nexis).

60.     Defendant prepared one or more consumer reports concerning Plaintiff after Plaintiff was discharged from Chapter 7 Bankruptcy.

61.     Defendant reported Plaintiff's credit history, including names of credit accounts, account numbers, account types, responsibility for the account (i.e., individual or joint accounts), the date the accounts were opened, statuses, and the date of the last status update.

62.     Defendant accurately reported at least seven pre-petition accounts as "discharged in bankruptcy."

63. Therefore, Defendant is certainly on notice of Plaintiff's bankruptcy filing and discharge from information provided by furnishers.

64. However, Defendant failed to accurately report Plaintiff's consumer bankruptcy information, including her discharge, in the Public Records section of Plaintiff's consumer reports.

65. Defendant reported the petition filing date of Plaintiff's bankruptcy but left a blank status for the "date resolved" field.

66. Notably, the other CRAs, Equifax and Trans Union accurately reported Plaintiff's bankruptcy information in the Public Records sections of their respective reports, and in the individual tradelines of their respective reports.

67. Upon information and belief, Defendant received notice of Plaintiff's bankruptcy discharge through its independent collection of Plaintiff's consumer information through vendors such as Lexis-Nexis, as well as from furnishers that provided data regarding the individual tradelines featured on Plaintiff's consumer reports.

68. Defendant also obtains information from other CRAs (who commonly share information).

69. Defendant should have accurately reported Plaintiff's bankruptcy information, including her complete discharge of all debt.

70. However, Defendant did not indicate that Plaintiff had received a discharge for her Chapter 7 bankruptcy.

71. The name, social security number, and address in Plaintiff's Chapter 7 petition match the information listed on Plaintiff's Experian consumer report.

72.     Defendant failed to report Plaintiff's bankruptcy discharge even though Defendant had all the correct personal information for Plaintiff in its database which matched the personal information reported in Plaintiff's Chapter 7 petition (e.g., full name, social security number, addresses).

73.     Additionally, at least seven furnishers reported the Plaintiff's discharged accounts as "included in bankruptcy" with zero balances.

74.     Defendant knew or should have known that Plaintiff's bankruptcy was discharged.

75.     In addition, public records reflecting Plaintiff's bankruptcy filing and subsequent discharge are readily available to Defendant through multiple sources such as PACER, but Defendant failed to review those sources or knowingly rejected them.

76.     In any event, Defendant knew or had reason to know that it reported information contradicted by notices received from third parties.

77.     Rather than accurately report the discharged debts, Defendant inaccurately reported Plaintiff's public record history.

### *Inaccuracies on Plaintiff's Consumer Report*

78.     On or about September 11, 2025 Plaintiff obtained copies of her Experian credit report.

79.     Upon review of her Experian report dated observed several Experian was inaccurately reporting the status of her Chapter 7 Bankruptcy.

80.     Defendant did not indicate that Plaintiff had and received a bankruptcy discharge.

81.     The name, social security number, and address in Plaintiff's Chapter 7 petition match the information listed on her Experian consumer report.

82.     Experian also had the correct petition filing date for Plaintiff's Chapter 7 bankruptcy.

83.     Defendant failed to report Plaintiff's bankruptcy discharge even though Defendant had all the correct personal information for Plaintiff in its databases which matched the personal information reported in Plaintiff's Chapter 7 petition (e.g., full name, social security number, address).

84.     Notably, non-parties Equifax and Trans Union accurately reported Plaintiff's public record and discharged based on the same information.

85.     Additionally, furnishers reported Plaintiff's discharged/zero account balances, bankruptcy and discharge information to Defendant.

86.     Defendant knew or should have known that Plaintiff's bankruptcy was discharged.

87.     Defendant reported debts that were in fact discharged in bankruptcy and were therefore required to report these as discharged and with a zero-dollar balance.

88.     Additionally, Defendant's failure to report Plaintiff's bankruptcy – filed in July 2019 and discharged in October 2019 – in Plaintiff's consumer report contributed to the numerous inaccuracies listed in Plaintiff's Experian consumer report.

89.     The furnishers of Plaintiff's Barclays Bank Delaware, Capital One, Citi, FNB Omaha, JPMCB accounts all reported "Discharged through Bankruptcy Chapter 7" to Experian.

90.     Upon information and belief, Lexis-Nexis furnished information to all three CRAs, including Defendant, that indicated Plaintiff had filed for bankruptcy and received a discharge, but Defendant rejected or otherwise failed to report the data it received.

91.     Upon information and belief, some or all of the data furnishers of the foregoing tradelines provided information to all three CRAs, including Defendants, that indicated their corresponding accounts had been discharged in bankruptcy, but CRA Defendants rejected or otherwise overrode the data they received.

92.     In addition, public records reflecting Plaintiff's bankruptcy filing and subsequent discharge are readily available to Defendant through multiple sources such as PACER, but Defendant failed to review those sources or knowingly rejected them.

93.     In any event, Defendant knew or had reason to know that it reported information contradicted by notices received from third parties.

94.     Defendant's reporting of Plaintiff's public record information is patently false/incorrect and therefore inaccurate.

95.     If not patently in accurate, CRA Defendant's reporting of Plaintiff's public record information is materially misleading and therefore inaccurate.

### *Plaintiff's Disputes*

96.     On numerous occasions Plaintiff disputed Experian's reporting of her Chapter 7 Bankruptcy status.

97.     She initiated disputes electronically on September 3, 2025, September 24, 2025, and October 23, 2025.

98.     On October 30, 2025, Plaintiff mailed a letter to Defendant disputing Experian's inaccurate reporting of her Chapter 7 Bankruptcy.

99.     The letter listed Plaintiff's full Social Security number, her date of birth, address, and a copy of her discharge order.

100.    Upon information and belief, Experian received all of Plaintiff's disputes.

101.    Defendant did not investigate Plaintiff's disputes.

102.    Although Defendant could have verified that the reporting of the Plaintiff's public record section through the same sources from which it receives consumer bankruptcy information, it neglected to do so.

103.    Rather than perform an investigation based on Plaintiff's dispute based on reasonably available public records and information known by Experian, Defendant continued to misreport the status of Plaintiff's Chapter 7 Bankruptcy.

104.    Defendant's failure to report the Chapter 7 Bankruptcy accurately after receiving data from numerous sources indicated that Plaintiff had received a discharge is particularly egregious because Defendant knew the information it reported was factually inaccurate and conflicted with information contained in its own records.

105.    Defendant inaccurately reported that Plaintiff had not yet received a discharge for her Chapter 7 Bankruptcy.

106.    If not patently false, Defendant's reporting of Plaintiff's public record is materially misleading and therefore inaccurate.

107. Plaintiff specifically notified Defendant that she had received a discharge but Defendant rejected this specific notice.

### Plaintiff's Damages

108. Upon information and belief, had Defendant accurately reported Plaintiff's Chapter 7 Bankruptcy information, her credit score would have been better.

109. After Plaintiff's bankruptcy discharge, on September 5, 2025, Plaintiff applied for credit with Community Choice Credit Union and was denied due to Defendant's inaccurate reporting.

110. As a direct result of Defendant's inaccurate reporting, Plaintiff suffers damages, including a decreased credit score, lower overall creditworthiness, and other financial harm.

111. Plaintiff sustained actual monetary damages from mailing a dispute letter to Experian.

112. As a direct result of Defendant's inaccurate reporting, Plaintiff also suffers actual damages in the form of attorneys' fees incurred, related to Defendant's inaccurate reporting.

113. Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish, loss of sleep, humiliation, stress, anger, frustration, shock, embarrassment, reputational harm, violation of privacy, and anxiety.

114. Defendant's conduct exacerbated Plaintiff's frustration during the already stressful post-bankruptcy period by hindering Plaintiff's ability to rebuild Plaintiff's credit.

**COUNT I**
**Defendant**
**15 U.S.C. § 1681e(b)**

**Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy**

115. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

116. The FCRA requires consumer reporting agencies, like Defendant, to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

117. In this case, Defendant negligently and willfully violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to assure maximum possible accuracy of Plaintiff's public record after Plaintiff received a Chapter 7 Discharge Order.

118. Defendant knew or should have known of Plaintiff's bankruptcy case and discharge through public records, independent collections of consumer information directly obtained by Defendant through public records vendors such as Lexis Nexis, Defendant's own files, and information provided by individual furnishers of account information, yet Defendant rejected that information.

119. Defendant's unreasonable policies and procedures cause them to routinely report inaccurate and materially misleading information about consumers, including Plaintiff, who have been discharged from Chapter 7 Bankruptcy.

120. Defendant's unreasonable policies and procedures cause it to regularly report consumer information without verifying its accuracy.

121. Defendant's unreasonable policies, procedures and/or algorithms consistently fail to identify and update pre-bankruptcy debts as required by § 1681e(b).

122. Defendant knows the information it reports about consumers' bankruptcies is often inconsistent with public records and its own files, including other furnishers that report to Defendant that the consumer's bankruptcy has been discharged.

123. In this case, Experian filed to indicate that Plaintiff had received a discharge after she filed for bankruptcy.

124. Defendant's failure to maintain and employ procedures to assure the maximum accuracy of consumers' public record history is particularly egregious because Defendant regularly and voluntarily searches for consumer bankruptcy information to include in credit files.

125. Defendant knows or should have known it are obligated, by the FCRA, to maintain and employ reasonable procedures to assure it reports maximally accurate consumer credit information.

126. Defendant knows or should have known it is obligated, by the FCRA, to update consumer reports and individual tradelines after receiving notice of a Chapter 7 Bankruptcy Discharge.

127. Defendant knows or should have known that the effect of a Discharge Order in a no-asset Chapter 7 Bankruptcy is to discharge all statutorily dischargeable debts other than those that have been reaffirmed in a reaffirmation agreement or successfully challenged in an adversary proceeding.

128. CRAs' obligations are established by the plain language of the FCRA, promulgated by the Federal Trade Commission, supported by well-established case law, and demonstrated in prior cases involving Defendant.

129. Therefore, Defendant had ample notice of its obligations under the FCRA and its continued use of reasonable procedures.

130. If Defendant contends it did not have sufficient notice, Defendant must justify its own failure to review and/or locate the substantial written materials that detail CRAs' duties and obligations under the FCRA, including where consumers file for Chapter 7 Bankruptcy.

131. Defendant regularly conducts voluntary public records searches with the intention of including bankruptcy information on the consumer reports it sells to other parties for a profit.

132. In this case, Defendant knows or should have known about Plaintiff's bankruptcy filing and discharge and failed to include that information in Plaintiff's consumer disclosure and in consumer reports published to third parties.

133. When Defendant received notice of Plaintiff's bankruptcy information, it had an obligation to ensure it reported Plaintiff's discharge and its effects with maximal accuracy.

134. Unfortunately, Defendant willfully and consciously breached its duties as a CRA and deprived Plaintiff of her right to a fair and accurate consumer report.

135. Despite knowledge of its legal obligations, Defendant violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to ensure maximum possible accuracy of Plaintiff's consumer disclosure/consumer report.

136. In this case, Defendant failed to report Plaintiff's bankruptcy information.

137. Defendant knows or should have known the information it reported was inaccurate.

138. Defendant violated 15 U.S.C. § 1681e(b) by failing to report accurate information when Defendant knows or should have known the information it is reporting is inaccurate, and/or otherwise contradicted by information known by Defendant, reported to Defendant, and/or reasonably available to Defendant.

139. Defendant's violations of 15 U.S.C. § 1681e(b) were willful.

140. Alternatively, Defendant's violations of 15 U.S.C. § 1681e(b) were negligent.

141. Defendant's inaccurate reporting damages Plaintiff's creditworthiness.

142. Plaintiff suffers actual damages, including the above-referenced economic damages, a decreased credit score, loss of credit opportunities and other financial harm caused by the Defendant's inaccurately reporting.

143. Plaintiff also suffers interference with daily activities caused by other harm including, but not limited to, emotional distress, mental anguish, humiliation, stress, anger, frustration, loss of sleep, shock, embarrassment, and anxiety.

144. Defendant is a direct and proximate cause of Plaintiff's damages.

145. Defendant is a substantial factor in Plaintiff's damages.

146. Therefore, Defendant is individually liable for actual and statutory damages, punitive damages, and attorneys' fees and costs, as well as other such relief permitted by 15 U.S.C. § 1681, *et seq*.

### COUNT II
### 15 U.S.C. § 1681i
### Failure to Perform a Reasonable Reinvestigation

147. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully set forth herein at length.

148. When a consumer disputes the accuracy or completeness of information included in a CRA's credit file, the FCRA requires the agency to either conduct a reasonable reinvestigation into the disputed information **or** delete the disputed information from the consumer's credit file within thirty (30) days of receiving notice of the dispute. 15 U.S.C. § 1681i(a)(2)(A).

149. When conducting its reinvestigation of disputed information in a consumer report, the consumer reporting agency is required to "review and consider all relevant information submitted by the consumer."

150. Additionally, the CRA must notify the person who furnished the disputed information of the consumer's dispute within five business days of its receipt. When notifying the furnisher of the consumer's dispute, the CRA is to "include all relevant information regarding the dispute that the agency received from the consumer." 15 U.S.C. § 1681i(a)(2)(A).

151. Thus, in addition to violating the FCRA by failing to follow reasonable procedures as 15 U.S.C. § 1681e(b) requires, Defendants also violated the FCRA by failing

to perform a reasonable reinvestigation of the disputed information even after Plaintiff notified it of the inaccurate information in Plaintiff's credit file.

152. Defendant's violations of 15 U.S.C. § 1681i include, but are not limited to the following:

a. Failing to reasonably reinvestigate the inaccurate information Plaintiff disputed.

b. Failing to consider all relevant information while investigating Plaintiff's dispute.

c. Instead of reasonably reinvestigating Plaintiff's dispute, Defendant continued to report the Plaintiff's public record information inaccurately after Plaintiff's bankruptcy discharge.

153. Defendant's inaccurate reporting damaged Plaintiff's creditworthiness.

154. Plaintiff suffers actual damages, including a decreased credit score, loss of credit opportunities, credit denial, and other financial harm caused by Defendant's failure to indicate that Plaintiff had received a discharge following her bankruptcy petition.

155. Plaintiff also suffers interference with daily activities caused by other harm including, but not limited to, emotional distress, mental anguish, humiliation, stress, anger, frustration, shock, embarrassment, and anxiety.

156. Defendant is a direct and proximate cause of Plaintiff's damages.

157. Defendant is a substantial factor in Plaintiff's damages.

158. Defendant's acts, as described above, were done willfully and knowingly; or, alternatively were committed negligently.

159.   Therefore, Defendant is liable for actual and statutory damages, punitive damages, attorneys' fees, costs, as well as other such relief permitted by 15 U.S.C. § 1681, *et seq*.

### III.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgments against Defendant for the following:

(a)   Declaratory judgment that the Defendant violated the FCRA, 15 U.S.C. § 1681e(b) and § 1681i;

(b)   An award of actual damages pursuant to 15 U.S.C. §§ 1681n(a)(1) or 1681o(a)(1);

(c)   An award of statutory damages pursuant to 15 U.S.C. §§ 1681n(a)(1) and 1681o(a)(1);

(d)   An award of punitive damages, as allowed by the Court pursuant to 15 U.S.C. § 1681n(a)(2),

(e)   Costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3) and § 1681o(a)(2); and

(f)   Such other and further relief as this Honorable Court may deem just and proper, including any applicable pre-judgment and post-judgment interest, and/or declaratory relief.

### V.   JURY DEMAND

Plaintiff hereby demands jury trial on all issues so triable.

RESPECTFULLY SUBMITTED this 19th day of April 2026

By: /s/ Adam Hubbi
Adam Hubbi, CA #359827
CONSUMER JUSTICE LAW FIRM PLC
8095 N. 85th Way
Scottsdale, AZ 85258
T: (602) 807-1505
F: (480) 613-7733
E: ahubbi@consumerjustice.com